IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FISSEHA GEZU, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:20-cv-01476-G-BT |
| | § | |
| CHARTER COMMUNICATIONS, | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant's Motion to Compel Arbitration and to Dismiss Under Rule 12(b)(3). Mot. (ECF No. 10). For the reasons stated, the Court should GRANT the Motion and DISMISS this civil action without prejudice to Plaintiff's right to demand arbitration.

**Background**

Defendant Charter Communications (Charter) employed Plaintiff Fisseha Gezu beginning in 2007. Compl. 2, ¶ 6 (ECF No. 3). While employed at Charter, Gezu allegedly suffered discrimination due to his race and national origin in the form of derogatory name calling and bullying. *Id.* 2–3, ¶¶ 9–13, 19–20. Charter also allegedly denied Gezu promotions and subjected him to disparate discipline because of his race and national origin. *See id.* ¶¶ 12–13, 23–25. Gezu contends that he made Charter aware of these issues, but nothing was done. *Id.* at ¶ 14–15. Instead, the discrimination allegedly continued, and Charter retaliated against him by terminating him for a pretextual reason on or about May 8, 2019. *Id.* at 4, ¶ 29.

Based on this conduct, Gezu filed a *pro se* lawsuit on June 8, 2020 asserting claims under Title VII of the Civil Rights Act and 42 U.S.C. § 1981. *Id.* at 1, ¶ 4; 4–7.

In response, Charter filed the pending Motion to Compel Arbitration under Federal Rule of Civil Procedure 12(b)(3). According to Charter, Gezu entered into a binding arbitration agreement while he was still employed. The agreement requires Gezu to participate in a legal dispute resolution program (the "Program") that provides for mandatory binding arbitration of "[a]ll disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which [an employee] or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as tort, contract, common law, or statutory claims (whether under local, state or federal law)." Def.'s Ex. C 13 (ECF No. 11-1); Def.'s Br. 2 (ECF No. 11). The Program explicitly includes claims for "unlawful discrimination or harassment (including such claims based upon race, color, national origin, sex, pregnancy, age, religion, sexual orientation, disability, and any other prohibited grounds)" and claims for "unlawful retaliation" as subject to mandatory binding arbitration. Def.'s Ex. C 13; Def.'s Br. 2.

Gezu filed his Response to Charter's Motion (ECF No. 12) on August 3, 2020, in which he denies that he is required to arbitrate his claims. He argues that he lacked adequate notice of the Program and never accepted the change to his employment contract. Charter filed a Reply (ECF No. 15) on August 20. Gezu then

2

filed a response to Charter's Reply (ECF No. 16). Charter's Motion is, therefore, fully-briefed and ripe for determination.

## Preliminary Matters

### Gezu's Surreply

As an initial matter, Charter has filed a Motion to Strike (ECF No. 18) Gezu's second Response to Charter's Motion to Compel. The Court construes Gezu's second Response as a surreply and GRANTS Charter's Motion to Strike.

Neither the local rules of this court nor the Federal Rules of Civil Procedure allow a party to file a surreply as a matter of right. N.D. Tex. Loc. Civ. R. 7.1(e)–(f); *Progressive Concepts, Inc. v. Hawk Elec., Inc.*, 2009 WL 10705253, at *1 (N.D. Tex. July 10, 2009). Indeed, surreplies are "highly disfavored" and permitted only in "extraordinary circumstances," such as when necessary to respond to new issues, theories, or arguments raised for the first time in a reply brief. *Luna v. Valdez*, 2017 WL 4222695, at *6 (N.D. Tex. Sept. 21, 2017); *see also Racetrac Petroleum, Inc. v. J.J.'s Fast Stop, Inc.*, 2003 WL 251318, at *18 (N.D. Tex. Feb. 3, 2003) ("A sur-reply is appropriate by the non-movant only when the movant raises new legal theories or attempts to present new evidence at the reply stage.").

Gezu has not shown the existence of any extraordinary circumstances that necessitate the filing of a surreply. Charter's reply does not raise any new issue, theory, or argument that would necessitate a surreply. Therefore, the Court orders the Clerk of Court to STRIKE Gezu's second Response to Charter's Motion to Compel Arbitration and Dismiss.

3

<u>Fries's Affidavit</u>

Additionally, in his first Response, Gezu moves to strike the affidavit of John Fries, provided by Charter in support of its Motion, arguing the affidavit "is not admissible because it was not sworn and notarized." Pl.'s Resp. 6 (ECF No. 12). John Fries is Charter's Vice President for HR Technology. For the following reasons, the Court DENIES Gezu's request.

Pursuant to Federal Rule of Civil Procedure 56(c)(4), a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." *Mason v. AT&T Servs. Inc.*, 2019 WL 4721015, at *5 (N.D. Tex. Aug. 27, 2019) (Rutherford J.) (quoting Fed. R. Civ. P. 56(c)(4)) (internal quotation marks omitted). 28 U.S.C. § 1746 sets out the requirements for a proper declaration:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), *such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration*, certificate, verification, or statement, in writing of such person *which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form* …

4

> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

*Id.* (quoting 28 U.S.C. § 1746) (emphases added). The Fifth Circuit has held that § 1746 "permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.' " *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988).

John Fries has worked in Charter's HR technology or reporting functions since 2003. Def.'s Ex. 1, 2, ¶ 1. He offered a statement in support of Charter's Motion based on his own personal knowledge. *See id.* at 4–5, ¶¶ 18–21 (documenting Fries's access to and review of relevant records kept by Charter). Though unsworn, Fries's declaration ends in the exact form required by § 1746: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. . . . Executed this 1st day of July 2020," followed by his signature. *Id.* at 4. Accordingly, the Court finds that the affidavit of John Fries is proper and DENIES Gezu's request to strike. *See Ortez v. Wise Cnty. Dep't*, 2020 WL 6820845, at *1 (considering an affidavit as competent evidence where the affiant declared her statement to be "true and correct" and made "under penalty of perjury").

5

## Legal Standards and Analysis

### Rule 12(b)(3)

Charter moves to dismiss Gezu's Complaint and compel arbitration under Federal Rule of Civil Procedure 12(b)(3). Under Rule 12(b)(3), claims may be dismissed for improper venue. Fed. R. Civ. P. 12(b)(3). "The United States Supreme Court has described an arbitration agreement as a 'specialized kind of forum-selection clause.'" *Wheeler v. Dollar Tree Stores, Inc.*, 2017 WL 3426300, at *2 (W.D. La. Aug. 8, 2017) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) ("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.")). Thus, the enforceability of an arbitration agreement may be analyzed under Rule 12(b)(3). *Id.*; *see also McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 430 n.5 (5th Cir. 2019) (acknowledging that while the Fifth Circuit has not decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper vehicle for a motion to dismiss based on an arbitration clause, it has accepted Rule 12(b)(3) as a proper method for seeking dismissal in favor or arbitration) (citing *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005)).

The Fifth Circuit has not ruled on which party bears the burden on a Rule 12(b)(3) motion, but "most district courts within this circuit have imposed the burden of proving that venue is proper on the plaintiff once a defendant has

objected to the plaintiff's chosen forum." *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 605 (N.D. Tex. 2017) (citing cases); *see also Victory Renewables, LLC v. Energy Trading Co.*, 2019 WL 2539209, at *3 (N.D. Tex. Feb. 8, 2019), *rec. adopted*, 2019 WL 2540738 (N.D. Tex. Mar. 6, 2019). When deciding a Rule 12(b)(3) motion, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. App'x 612, 615 (5th Cir. 2007) (per curiam) (citations omitted). The court may consider evidence in the record beyond the facts alleged in the complaint and its proper attachments. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (citations and internal quotation marks omitted) ("[T]he court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). "Absent an evidentiary hearing on a Rule 12(b)(3) motion, affidavits and other evidence submitted by the non-moving party are viewed in the light most favorable to that party." *Mem'l Hermann Health Sys. v. Blue Cross Blue Shield of Tex.*, 2017 WL 5593523, at *4 (S.D. Tex. Nov. 17, 2017) (citing *Ambraco*, 570 F.3d at 238).

<u>The Federal Arbitration Act</u>

American courts adopted from the English common law "centuries of judicial hostility to arbitration agreements." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510 (1974). Congress passed the Federal Arbitration Act (FAA) to reverse this

hostility and "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity or the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "The FAA thereby places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them according to their terms." *Rent-A-Center*, 561 U.S. at 67.

Under § 4 of the FAA, parties aggrieved by another party's failure to arbitrate a claim pursuant to a written arbitration agreement "may petition a federal court 'for an order directing that such arbitration proceed in a manner provided for in such agreement.' " *Id.* at 68 (quoting 9 U.S.C. § 4). "Once the court is satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, it shall order arbitration." *Floyd v. Kelly Servs., Inc.*, 2019 WL 4452309, at *2 (N.D. Tex. Aug. 30, 2019) (Rutherford, J.) (citing *Rent-A-Center*, 561 U.S. at 67) (internal quotation marks omitted).

"Courts perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). First, the court determines "whether the parties agreed to arbitrate the dispute," *Floyd*, 2019 WL 4452309 at *2, as "[a]rbitration is strictly a

matter of consent." *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 299 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)) (internal quotation marks omitted). This inquiry involves answering two questions: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in questions falls within the scope of the arbitration agreement." *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)) (internal quotation marks omitted). The strong federal policy favoring arbitration does not apply "to the determination of whether there is a valid agreement to arbitrate between the parties." Second, the court must determine "whether any federal statute or policy renders the claims nonarbitrable." *Floyd*, 2019 WL 4452309 at *2 (quoting *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)) (internal quotation marks omitted). Neither Gezu nor Charter contest that (1) if there is a valid arbitration agreement, Gezu's claims fall within the scope of the Agreement or (2) there is a federal statute or policy rendering Gezu's claims nonarbitrable. The Court, therefore, need only address whether a valid agreement to arbitrate exists between the parties.

I.    <u>There is a valid agreement to arbitrate between Gezu and Charter.</u>

In determining whether a valid arbitration agreement exists, "[c]ourts apply ordinary state-law principles that govern the formation of contracts." *Maravilla v. Gruma Corp.*, 783 Fed. App'x 392, 394 (5th Cir. 2019) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)) (internal quotation marks omitted).

"Texas courts apply the 'most significant relationship test' to determine which state's law to apply in breach of contract case." *Krohn v. Spectrum Gulf Coast, LLC*, 2019 WL 4572833, at *3 (N.D. Tex. Sept. 19, 2019) (citing *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 802 (5th Cir. 2007); *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000)). Relevant factors to consider under this test include "the place where the injury occurred, the place where the injury causing conduct occurred, the parties' residence, and the place where the relationship, if any, between the parties is centered." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003).

Here, Charter employed Gezu in Texas and Gezu resided in Texas while working for Charter. Def.'s Reply 3 n. 1. The relationship between the two parties is centered around their interactions in Texas. Additionally, both parties appear to agree that Texas law applies in the present case. *See* Def.'s Br. 5 (discussing Texas contract law); Pl.'s Resp. 3 (same); Def.'s Reply 3 n. 1 (ECF No. 15) ("Texas law governs in this case"). Accordingly, the Court will apply Texas contract law.

"Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Hi Tech Luxury Imps., LLC v. Morgan*, 2019 WL 1908171, at *1 (Tex. App.—Austin Apr. 30, 2019, no pet.) (quoting *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018)) (internal quotation marks omitted). "'The determination of a meeting of the minds, and thus offer and

acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind.'" *In re Capco Energy, Inc.,* 669 F.3d 274, 280 (5th Cir. 1980) (quoting *Copeland v. Alsobrook*, 3 S.W.3 598, 604 (Tex. App.—San Antonio 1999, pet. denied)). Additionally, a valid contract also requires consideration. *Id.*

Here, Charter maintains that a valid and enforceable contract exists because Charter offered the arbitration agreement to Gezu by email; Gezu reviewed and accepted the agreement; and mutual arbitration obligations make up consideration that supports the agreement. Def.'s Br. 5. Specifically, Charter avers that Gezu was still an employee of Charter on October 6, 2017, when Charter sent an announcement via email informing its employees of a modification to their existing employment contracts in the form of a new employment-based legal dispute resolution Program known as the Solution Channel. Def.'s Br. 1. The announcement stated that employees would be enrolled in the Program unless they opted out within thirty days while providing instructions for employees that did wish to opt out of the Program. Def.'s Br. 1–2; Def.'s Ex. 1, 3–4, ¶¶ 8–15 (ECF No. 11-1).

Gezu, however, argues that he did not consent to the arbitration agreement. Pl.'s Resp. 2–3, 5, 7. He asserts that he does not recall opening the email announcement informing employees of the Program and their right to opt out; and even if he did open the email, "it doesn't mean that [he] read it in its entirety and agreed with any arbitration agreement." Pl.'s Aff. 2, ¶¶ 9–10 (ECF No. 12-1).

The Fifth Circuit has explained that an agreement to arbitrate may be established by modifying a pre-existing at-will employment contract. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202–03 (5th Cir. 2016). The question then becomes "whether the arbitration agreement was a valid modification of the terms of . . . employment." *Butler v. TFS Oilfield Servs., LLC*, 2017 WL 7052306, at \*3 (W.D. Tex. Aug. 24, 2017), *rec. adopted*, 2017 WL 7052277 (W.D. Tex. Sept. 28, 2017) (citing *Kubala*, 830 F.3d at 202). "To demonstrate a modification of the terms of at-will employment, the proponent of the modification must demonstrate that the other party (1) received notice of the change and (2) accepted the change." *Kubala*, 830 F.3d at 203 (citing *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002)).

   a. <u>Gezu received sufficient notice from Charter regarding modification of his employment contract.</u>

To determine whether an employee has received adequate notice of modification to a pre-existing employment contract, "Texas courts look to 'all communications between the employer and employee.' " *Krohn*, 2019 WL 4572833, at \*3. "To be sufficient, the notice must 'unequivocally notif[y]' the employee of the existence of an arbitration agreement." *Id.* (quoting *In re Halliburton*, 80 S.W.3d at 568). This Court has previously found in a similar case that Charter's email announcement to employees regarding the Program provided notice sufficient to satisfy this standard. *See id.* In *Krohn v. Spectrum Gulf Coast, LLC*, the court found that Charter's email announcement constituted adequate

12

notice because the email informed employees of the launch of a new program requiring "binding arbitration"; that they waived their right to initiate or participate in court litigation; that they could access the full agreement through a link in the email; and that the agreement would be binding on any employee who did not timely opt out. *Id.* The court, therefore, concluded that the announcement "unequivocally notified" the plaintiff of the existence of the agreement. *Id.*

The plaintiff in *Krohn* also argued—like Gezu—that he did not receive adequate notice because he did not recall having received or read the email. *Id.* Applying the mailbox rule, the court dismissed this objection, as the plaintiff failed to rebut the presumption raised by Charter that he had received the announcement. *Id.*

Courts apply the mailbox rule "when there is a material question as to whether a document was actually received." *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 419 (5th Cir. 2007). A presumption of receipt is created when a party provides credible evidence that it properly sent a message to the recipient. *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983) (citing *Southland Life Ins. Co. v. Grenwade*, 159 S.W.2d 854 (Tex. 1942)); *see also Nart v. Open Text Corp.*, 2013 WL 442009, at *2 n. 4 (W.D. Tex. Feb. 5, 2013) (applying the mailbox rule to emails that do not "bounce back" to the sender). It is not necessary to show that the other party *actually received* the notice, only that the message was sent in keeping with regular procedures. *Marsh v. First USA Bank, N.A.*, 103 F.Supp.2d 909, 918–19 (N.D. Tex. May 23, 2000). Once a presumption

of receipt is established, the burden then shifts to the other party to rebut the presumption with credible evidence. *Krohn*, 2019 WL 4572833, at *3 (citing *Custer*, 503 F.3d at 419; *Nart*, 2013 WL 442009, at *2).

The Court in *Krohn* found that the plaintiff did not overcome the presumption of receipt raised by Charter. *Id.* Charter met its burden in that case, according to the court, by submitting a sworn affidavit of a knowledgeable officer swearing that Charter sent the announcement to a group of employees that included the plaintiff while the plaintiff merely cited a lack of memory. *Id.* The plaintiff's rebuttal was insufficient, as a "bare allegation of memory loss is not credible evidence sufficient to rebut the presumption of receipt," so the court concluded the plaintiff did have adequate notice of the Agreement. *Id.*

In the present case, just as in *Krohn*, Charter sent notice of the program by email on October 6, 2017. Def.'s Br. 1; *see* Pl.'s Resp. 1, ¶ 2. Charter offers two statements from knowledgeable officers attesting to this fact. A statement made under penalty of perjury by John Fries, Charter's Vice President for HR Technology, asserts that Gezu did receive the announcement—based on a record of the distribution list. Def.'s Ex. 1, 2, ¶ 1; 5, ¶ 20. Daniel Vasey, the Senior Director of Records Management and eDiscovery at Charter, similarly alleges, based on his review of the company's email archives, that the announcement was sent to Gezu's Charter email address. Def.'s Ex. 2, 2–3, ¶¶ 1, 5 (ECF No. 15-1); Def.'s Ex. A 5 (ECF No. 15-1). Additionally, Vasey claims that Charter's email click data shows that Gezu opened the announcement five times. Def.'s Ex. 2, 3, ¶ 7.

14

These statements, paired with evidence of actual receipt and opening of the announcement, is enough for Charter to meet its burden under the mailbox rule. *See Krohn*, 2019 WL 4572833, at \*3 (finding Charter met its burden to show it sent notice in keeping with regular procedures "by submitting the Affidavit of [an officer], which swears that Charter sent the Email to a group of employees that included Plaintiff"); *Gamel v. Grant Prideco, L.P.*, 625 Fed. App'x 690, 694 (5th Cir. 2015) ("[A] sworn statement is credible evidence of mailing for the purposes of the mailbox rule."). Gezu fails to rebut this presumption of receipt. He merely claims that he did not receive the announcement—or at least did not read it— without more. This bare allegation is not enough to overcome the presumption of receipt. *See Krohn*, 2019 WL 4572833, at \*3. Gezu's other arguments for why he lacked adequate notice also fail.

First, Gezu challenges the adequacy of notice by relying on the fact that he was not working on the date of the announcement. *See* Pl.'s Resp. 1, ¶ 5 (ECF No. 12). This does not appear to be relevant, as Gezu does not claim that he was not scheduled to work for the entire thirty-day opt-out period. Gezu also makes a number of unsupported assertions that Charter should have: (1) sent reminder emails regarding the announcement; (2) held meetings to discuss the arbitration agreement; (3) sent him a hard copy of the announcement; (4) flagged the announcement as important; (5) required employees to opt-in rather than opt-out; (6) required an acknowledgement signature from employees; (7) provided him with a laptop computer to review the documents; (8) not sent the announcement

15

on a Friday afternoon; (9) blocked off time in his work schedule for him to read the announcement; and (10) mentioned arbitration or the Program earlier in the email. *See* Pl.'s Resp. 1–5; Pl.'s Aff. 1–2 (ECF No. 12-1).

Gezu identifies no authority, and the Court finds none, that requires Charter to take any of these actions. To the extent that Gezu contends he had technical difficulty accessing the announcement, this argument is belied by Charter's evidence showing that Gezu opened the email five times. *See* Def.'s Ex. 2, 2–3, ¶¶ 1, 5 (ECF No. 15-1); Def.'s Ex. A 5 (ECF No. 15-1). Accordingly, the Court finds that Gezu had sufficient notice of the modification to his employment contract.

### b. <u>Gezu accepted the modification of his employment contract by continuing to work for Charter after he had notice of the modification.</u>

Under Texas law, employees who have received notice of modification to the terms of their employment contract accept the modification as a matter of law by continuing to work with knowledge of the modified terms. *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002)). "[W]hen the employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit," as acceptance "need not be anything more complicated than continuing to show up for the job and accept wages in return for work. *Kubala v. Supreme Prod. Servs. Inc.*, 830 F.3d 199, 203 (5th Cir. 2016) (quoting *Hathaway v. Gen. Mills, Inc.*, 711 S.W.3d 227, 229 (Tex. 1986)). "Texas law is no different when the modification in question is an arbitration requirement for employment-related disputes." *Id.*

Here, it is undisputed that Gezu continued to work for Charter until May 2019—nearly a year-and-a-half after Charter sent notice of the modification to his employment contract. *See* Compl. 4, ¶ 29; Def.'s Reply 7. As stated, Gezu had the opportunity to opt out of the Program but chose not to. Def.'s Ex. 1, 5, ¶ 21. Accordingly, Gezu accepted the terms of the Program, including those mandating binding arbitration of his claims. *See Krohn*, 2019 WL 4572833, at *3 (finding the plaintiff accepted modification of his employment contract by continuing to work for his employer); *Matos v. AT&T Corp.*, 2019 WL 5191922, at *4 (N.D. Tex. 2019) ("Plaintiff accepted the terms of the Agreement by failing to opt out."). A valid agreement to arbitrate work-related disputes, therefore, exists between Gezu and Charter.

II.    <u>Gezu's other arguments fail.</u>

Gezu asserts two additional arguments in opposition to Charter's Motion to Compel Arbitration and Dismiss. First, he claims that Charter's use of email to announce the Program constituted an "unfair deceptive practice." Pl.'s Resp. 3, 6. Although Gezu did not raise such a claim in his Complaint, the Court could construe this as a claim under Texas' Deceptive Trade Practices Act (DTPA). *See Baney v.* Holder, 2012 WL 12886977, at *3 (N.D. Tex. Nov. 16, 2012) (stating that "a court must look at a *pro* se litigant's response to a motion to dismiss as a motion to amend the complaint to the extent that it raises new claims"). Such a construction is unnecessary, however, if an amendment would be futile. *See Anderson v. Law Firm of Shorty, Dooley & Hall*, 393 Fed App'x 214, 217–18 (5th

Cir. 2010) ("Generally it is improper for a district court to dismiss a pro se complaint without affording the plaintiff the opportunity to amend, . . . but, after reviewing the record, including [Plaintiff's] filings in opposition to the motions to dismiss filed by other defendants, we are convinced that [Plaintiff] had pleaded her best case. Accordingly, there was no reversible error."). "[A]n amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016).

The DTPA protects consumers, those who "seek to acquire goods or services by purchase or lease." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 724–25 (5th Cir. 2013). Consumers only receive protection if "the goods or services purchased or leased . . . form the basis of the complaint. *Id.* (citing Tex. Bus. & Com. Code § 17.45(4) (defining "consumer")). Here, Gezu was an employee of Charter, not a consumer. No part of his claim is centered around acquiring goods or services from Charter. Accordingly, it would be futile to allow him to amend his Complaint to add a DTPA claim.

Second, Gezu argues that the size and timing of Charter's email would have necessitated reading the announcement outside of his scheduled work hours in violation of "the 'fair labor act of 1938.' " Pl.'s Resp. 4. The Fair Labor Standards Act (FLSA), passed in 1938, focuses on wages—minimum hourly rates and overtime pay. *Berry v. Bd. Of Supervisors of L.S.U.*, 715 F.2d 971, 976 (5th Cir. 1983). It requires employers to pay covered employees a minimum wage and at least one-and-one-half-times their regular wages when they work more than forty

hours in a week. *Molina-Aranda v. Black Magic Enters., L.L.C.*, --- F.3d ---, 2020 WL 7486307 (5th Cir. 2020). "Work" in the context of the FLSA has been defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (quoting *Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944)).

Even construing Gezu's argument liberally, he fails to state a wage-and-hour claim under the FLSA. Although Charter sent the email on a Friday, Gezu offers no evidence that Charter required or even encouraged him to read the email outside of working hours. He similarly fails to provide any evidence that he was unable to read the email on company time during the thirty-day opt-out period. As stated, Gezu identifies no authority, and the Court finds none, that requires Charter to block off time for employees to read the email announcement. And to the extent that Gezu contends he had technical difficulty accessing the announcement, this argument is belied by Charter's evidence showing that Gezu opened the email five times. *See* Def.'s Ex. 2, 2–3, ¶¶ 1, 5 (ECF No. 15-1); Def.'s Ex. A 5 (ECF No. 15-1).

Accordingly, a claim under the FLSA would be futile as well. The Court, therefore, concludes that the additional arguments raised in Gezu's Response do not warrant construction as a motion to amend.

III.    Dismissal of Gezu's claims is appropriate.

When a dispute is subject to mandatory arbitration, "the proper course of action is usually to stay the proceedings pending arbitration." *Ruiz v. Donahoe*,

784 F.3d 247, 249 (5th Cir. 2015) (citing 9. U.S.C. § 3; *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 658–59, 662 (5th Cir. 1995)). "The Fifth Circuit has interpreted that language as authorizing 'dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.' " *Krohn,* 2019 WL 4572833, at *4 (N.D. Tex. Sept. 19, 2019) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). This decision—of whether to stay or dismiss—is left to the sound discretion of the district court. *Fedmet Corp. v. M/V BUYALK*, 194 F.3d 674, 678–79 (5th Cir. 1999) ("We have previously held that district courts have discretion to dismiss cases in favor of arbitration under 9 U.S.C. 3."); *Parrott v. D.C.G., Inc.*, 2020 WL 1876096, at *2 (N.D. Tex. Apr. 14, 2020). Accordingly, because all of Gezu's claims against Charter fall under the Program and will be resolved by arbitration, the Court should dismiss his claims. *See Floyd*, 2019 WL 4452309, at *2 (granting the defendant's motion to dismiss because all of plaintiff's claims were arbitrable); *Krohn*, 2019 WL 4572833, at *4 (same)

## Recommendation

For the foregoing reasons, the Court should GRANT Defendant's Motion to Compel Arbitration and to Dismiss Under Rule 12(b)(3) (ECF No. 10) and DISMISS this action without prejudice to Plaintiff's right to demand arbitration. Additionally, the Court GRANTS Defendant's Motion to Strike Plaintiff's Surreply (ECF No. 18) and DENIES Plaintiff's Motion to Strike the affidavit of John Fries (ECF No. 12).

**SO ORDERED.**

January 7, 2021.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).